```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY


DWAUNE J. GRAVELY,            :
                              :
         Plaintiff,           :    HONORABLE JOSEPH E. IRENAS
                              :
     v.                       :    CIVIL ACTION NO. 02-5594 (JEI)
                              :
MICHAEL SPERANZA, et al.,     :
                              :            OPINION
         Defendants.          :
```

**APPEARANCES:**

LAW OFFICES OF RONALD B. THOMPSON, P.C.
By: Ronald B. Thompson, Esq.
3003 Lincoln Drive West, Suite E
Marlton, New Jersey 08053
    Counsel for Plaintiff

PETER C. HARVEY, ATTORNEY GENERAL OF NEW JERSEY
By: Melanie L. Armstrong, Esq.
Deputy Attorney General
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112
    Counsel for Defendants Scull and Bebee

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
By: Richard L. Goldstein, Esq.
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, New Jersey 08002
    Counsel for Defendants City of Bridgeton, Johnson, Speranza,
    Kehn, Pierce, Giamari, Battavio and Crokus


**IRENAS**, Senior District Judge:

    This lawsuit arises from injuries suffered by Plaintiff Dwuane Gravely ("Plaintiff") stemming from the events leading up to his arrest and eventual conviction for several federal offenses. Plaintiff alleges that the defendants subjected him to

excessive force and deprived him of due process in violation of his constitutional rights.  Presently before the Court are the Motions for Summary Judgment by two groups of the remaining defendants in this case.

## I.

Dwaune Gravley ("Plaintiff") alleges that on July 30, 2001, at approximately 7:30 p.m., five officers of the Bridgeton Police Department shot him numerous times, causing life-threatening injuries, a permanent loss of the use of his left hand and arm, as well as emotional and psychological trauma.  Plaintiff also contends that officers and investigators participated in a conspiracy to cover up this incident and also fabricated accounts of the true events, which resulted in Plaintiff's incarceration.

Many of the facts regarding the events of July 30 are undisputed.  At 7:17 p.m., Sergeant Anthony Crokus ("Crokus") received a report of an armed home invasion perpetrated by Plaintiff.  Crokus dispatched police units to the home, and alerted responding officers that the perpetrator was armed with a machine gun.  Patrolman Michael Speranza ("Speranza") responded to Crokus' dispatch and drove toward the home.  Speranza intercepted Plaintiff's vehicle near the scene of the home invasion and attempted to pull Plaintiff over, activating the lights and sirens on his patrol car.

Plaintiff stopped his vehicle in the middle of the road,

exited the car and began to run away with a loaded Uzi 9 millimeter semi-automatic rifle in his hand.  Patrolman James Battavio ("Battavio") had also arrived at the scene and got out of his car with his gun drawn.  Speranza ran after Plaintiff.  Plaintiff turned, pointed his weapon at Speranza and fired.[1]  Speranza shot twice at Plaintiff as he fled, hitting him once in the shoulder.  Speranza then radioed that shots had been fired.  Back-up units responded to Speranza's transmission;  Detective Rick Pierce ("Pierce"), Crokus, Patrolman Gary Kehn ("Kehn"), and Patrolman Richard Johnson ("Johnson") were among the responding officers.

Plaintiff continued to evade police on foot.[2]  He fired shots at Officer Johnson and a bystander.  After running through several commercial parking lots in the area and past the State Building in Bridgeton, Plaintiff entered a car stopped at a traffic light at a nearby intersection and pointed his gun at the driver's head.  Plaintiff then tried to crawl under the dashboard.  The car was occupied by James and Grace Gayle and their twenty-month-old child, who was in the rear of the car.  As Plaintiff was lying on the floor of the vehicle, Kehn, Battavio, Pierce, and Crokus shot

---

[1] Plaintiff denies shooting at the police. However, Plaintiff was convicted on November 21, 2003, of two counts of discharging a firearm in violation of 18 U.S.C. § 924.

[2] Plaintiff does not dispute that he was fleeing police prior to his arrest.  Plaintiff asserts, however, that he feared for his life and was fleeing to avoid being shot.

3

at Plaintiff in the vehicle, "striking him multiple times in the left side." (Pl. Opp. Brief at 4).

Crokus pulled Plaintiff out of the vehicle and onto his back, and Pierce grabbed Plaintiff's weapon. Speranza then kicked Plaintiff. Plaintiff contends that Speranza kicked him until Speranza was stopped by Crokus. Speranza maintains that Plaintiff appeared to be reaching for a weapon concealed at his waist and disregarded orders to stop resisting and to remain still.

During this incident, the officers fired a total of seventeen rounds. Speranza fired his gun twice, Battavio four times, Crokus once and Ken eight times. It is unclear from the record how many times Plaintiff was shot. Plaintiff contends that as a result of being shot, he has permanently lost the use of his left hand and arm, and has suffered emotional distress.

Plaintiff was initially indicted by a Cumberland County grand jury for various crimes arising from the events of July 30, 2001. The state court indictment was dismissed and Plaintiff was indicted by a federal grand jury on August 22, 2002. On November 21, 2003, a jury found Plaintiff guilty of one count of possession with intent to distribute more than five grams of crack cocaine, two counts of discharging a firearm in conjuction with a violent or drug-related crime, one count of car-jacking, and one count of possession of a weapon by a convicted felon.

On November 20, 2002, Plaintiff filed a *pro se* complaint

pursuant to 42 U.S.C. § 1983 against Speranza, Kehn, Battavio, Crokus, Pierce, Johnson, Sergeant Michael Giamari ("Giamari"), Detective William Scull ("Scull"), Detective Thomas Bebee ("Bebee"), Assistant Prosecutors Arthur Marchand and Thomas DeSimmone,[3] and the City of Bridgeton, alleging that Defendants' actions violated Plaintiff's constitutional rights.

Specifically, Plaintiff has raised the following claims: (1) excessive force in violation of the Fourth Amendment against Speranza, Battavio, Kehn, Pierce and Crokus; (2) conspiracy to deprive Plaintiff of his constitutional rights by covering up the incident of excessive force against Speranza, Battavio, Kehn, Pierce, Crokus, Giamari and Johnson; (3) falsification of official reports against Johnson; (4) presentation of perjury before the Cumberland County grand jury against Scull; (5) failure to preserve evidence against Bebee; (6) failure to follow departmental policies against Giamari; (7) municipal liability for failure to train officers resulting in the violation of his constitutional rights; and (8) prosecutorial misconduct based on the failure of Marchard and DeSimmone to turn over exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963).

Bebee and Scull jointly filed a motion for summary judgment. The City of Bridgeton, Speranza, Battavio, Kehn, Pierce, Crokus,

---

[3]On March 13, 2003, this Court dismissed the claims against Defendants Marchand and DeSimmone.

Johnson, and Giamari also filed a motion for summary judgment.

## II.

Under Fed. R. Civ. P. 56(c), a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollack v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The role of the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The non-moving party may not rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Even where the non-moving party does not respond, a court may not automatically grant a motion for summary judgment.  Rule 56(e) provides that such a judgment may be entered only "if appropriate."

**III.**

**A.**

Defendants assert that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars all claims against them because Plaintiff's allegations arise from the same events that led to his conviction for car-jacking and discharging of a weapon. In *Heck*, the Supreme Court held that a prisoner may not use a Section 1983 damages action to collaterally attack his conviction or sentence. 512 U.S. at 486. When a prisoner seeks damages in a Section 1983 action, "a district court must consider whether judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," and if so, the suit must be dismissed unless the plaintiff can demonstrate that his conviction or sentence has been invalidated. *Id.* at 487.

*Heck* does not serve as a complete bar to all civil rights claims related to a prisoner's arrest. *See Nelson v. Jashurek*, 109 F.3d 142 (3d Cir. 1997)(holding that plaintiff's conviction for resisting arrest did not preclude excessive force claim under *Heck*). A plaintiff may claim that an officer used excessive force in effecting an otherwise lawful arrest without running afoul of *Heck*.[4] *Id.* at 145-46. As such, Plaintiff's excessive force

---

[4] In assessing Plaintiff's excessive force claims, however, the Court must not reach a decision that is inconsistent with his convictions for car-jacking, possession of crack cocaine with intent to distribute, discharging a firearm in the course of a violent or drug-related crime, or illegal possession of a weapon. *See Nelson*, 109 F.3d at 146. Plaintiff's conviction on these counts establishes that he discharged his weapon.

7

claims against Defendants Speranza, Battavio, Kehn, Pierce and Crokus are not barred, nor are the related conspiracy claims against these Defendants, Giamari or Johnson.[5]

The claims against Giamari for failure to follow departmental policy and the City of Bridgeton under for failure to train its officers are also not barred by *Heck*, to the extent that they are based upon the allegations of excessive force or the alleged conspiracy to cover up the use of force.

Plaintiff's claim against Defendant Scull is based upon Scull's allegedly perjured testimony before the Cumberland County grand jury regarding the home invasion charge.  Plaintiff was not indicted or convicted in federal court on any counts related to the home invasion, and thus his claim does not necessarily implicate the validity of his federal conviction or sentence for car-jacking, possession of crack cocaine with intent to distribute, discharging a weapon and illegal possession of a weapon.  Plaintiff's claim against Scull is not barred by *Heck*.

Two of Plaintiff's claims must be dismissed pursuant to *Heck*. Plaintiff alleges that Defendant Johnson falsified official reports, but does not address this claim in his response to the summary judgment motions or otherwise specify which documents were allegedly falsified.  As this allegation involves evidence

---

[5]Plaintiff's Complaint alleges that Johnson conspired to cover up "a crime."  Reading the Complaint as a whole, the Court construes Plaintiff's allegation to be that Johnson participated in the conspiracy to cover up the use of excessive force.

presented during Plaintiff's criminal proceedings and thus calls into question the validity of Plaintiff's conviction or sentence, it is barred by *Heck*.

Plaintiff alleges that Defendant Bebee failed to preserve evidence.[6]  The Court interprets his claim as stating a due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963). Were this Court to find for Plaintiff on this claim, it would necessarily imply the invalidity of his conviction or sentence, and thus is barred by *Heck*.  Due process claims such as those against Johnson and Bebee must be brought upon direct appeal of Plaintiff's conviction or in a habeas corpus proceeding, not a Section 1983 damages action.

**B.**

The Supreme Court has held that all claims of excessive force by law enforcement officers in the course of an arrest, investigatory stop, or other "seizure" of a person are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989).  There is no dispute that Plaintiff was subject to a seizure by police, and thus the only question before this Court is whether the force used to

---

[6]The evidence he contends was not preserved, however, was made available to Plaintiff and his counsel during his criminal proceedings.

effect the seizure was reasonable given the circumstances.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 5, 8 (1985) (internal citations omitted)).  The test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Garner*, 471 U.S. at 8-9.

*Terry v. Ohio* counsels that the "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  392 U.S. 1, 20 (1968).  The relevant inquiry in an excessive force case is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397.

The question of whether the force used by a police officer was reasonable is generally a question for the jury.  *Abraham v.*

10

*Raso*, 183 F.3d 279, 289-90 (3d Cir. 1999).  However, "'even though reasonableness is traditionally a question of fact for the jury, . . ., defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" *Id.* at 290 (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).  Keeping in mind the Supreme Court's command that a judge's task on summary judgment is not to weigh the evidence or determine the truth of the matter, *Anderson*, 477 U.S. at 249, this Court concludes that the record permits it to determine whether the officers actions were reasonable as a matter of law.

　　The Supreme Court's decision in *Garner* is particularly instructive here.  In that case, a police officer shot and killed an unarmed child, Edward Garner, as he fled from the scene of a burglary of an unoccupied house.  471 U.S. at 3-4.  Garner's father brought a wrongful death action under 42 U.S.C. § 1983 for various constitutional violations against the Memphis Police Department and the individual officer who shot his son.  *Id.* at 5.  *Garner* concluded that deadly force may only be used to apprehend a fleeing suspect if such force is necessary to prevent the escape *and* the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.  *Id.* at 11.

In the present case, the factors discussed in *Garner* and its progeny favor Defendants' decision to use deadly force against Plaintiff.  Defendants were responding to reports and observations of severe crimes, namely armed home invasion and car-jacking.  Plaintiff was armed and shot at the officers who were pursuing him, as well as a bystander.[7]  Plaintiff fled from the police first in a vehicle and then on foot, culminating with the car-jacking of a vehicle occupied by three people, including a twenty-month old child.  Plaintiff did not obey the officers' commands to halt and stop resisting.

The crimes of which Plaintiff was convicted were particularly severe and dangerous.  The car-jacking statute, 18 U.S.C. § 2119, provides that it is a crime to take a vehicle by force and violence or by intimidation, with the intent to cause death or severe bodily harm.  Witnesses observed Plaintiff putting his weapon to the head of the woman driving the car-jacked vehicle.  Plaintiff was also convicted of two counts of discharging a weapon in the course of a violent or drug-related crimes.  Additionally, officers found crack cocaine in the vehicle Plaintiff abandoned before fleeing on foot, leading to his conviction for possession of crack cocaine with intent to distribute.

---

[7] Plaintiff contends that he did not shoot at the officers.  However, Plaintiff was convicted of two counts of discharging a weapon, specifically a short barreled rifle or shotgun, in the course of a violent or drug-related crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(c)(1)(B)(I). Plaintiff is collaterally estopped from asserting that he did not discharge his weapon.

After Plaintiff was shot inside the car-jacked vehicle and officers pulled him from the car, Plaintiff reached towards his waistband after Speranza ordered him to stop moving. Speranza then kicked Plaintiff. Given that Plaintiff had previously shot at the police, it was reasonable for Speranza to conclude that Plaintiff may have been reaching for a concealed weapon.

Viewed through the eyes of a reasonable officer and giving careful attention to the "tense, uncertain, and rapidly evolving," *Graham*, 490 U.S. at 396, circumstances of Plaintiff's arrest, Defendants reasonably concluded that Plaintiff posed an immediate threat to the safety of the officers, the occupants of the vehicle and any bystanders, and that he was actively evading arrest. *See Marche v. Parrachak*, No. CIV. A. 1998-CV-4219, 2000 WL 1507403 (E.D. Pa. Oct. 10, 2000)(holding that police officer did not use excessive force in shooting plaintiff, who pointed weapon at officer while committing armed bank robbery and engaged in physical struggle with officer). The officers involved all stated that they feared for their own safety and that of the passengers in the car.

In the absence of an underlying constitutional violation, Plaintiff's claims that Defendants conspired to cover up the use of excessive force must similarly fail. Section 1983 does not create a cause of action for conspiracy to deprive a person of their constitutional rights without an actual deprivation of

13

rights protected by the statute.  *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 832 n.23 (D.N.J. 1993); *DeFeo v. Sill*, 810 F. Supp. 648, 658 (E.D. Pa. 1993).

### C.

Plaintiff alleges that Scull committed perjury before the Cumberland County grand jury when he testified that DeAndre Mosley stated that Plaintiff had kicked in the door at house where the reported home invasion took place.  A police report and the transcript of a taped interview indicate that Mosley stated that Plaintiff knocked on the door with something metallic, and then Mosley opened the door.  Scull took a tape recorded statement from Joyius Heigh, however, in which she stated that she saw Plaintiff kick in the door.  Heigh drove with Plaintiff to the house and remained in the car during the events in question.

Drawing all inferences from this discrepancy in Scull's testimony in favor of Plaintiff, the claim against Scull still must fail.  The Court fails to see the relevance of this discrepancy.  While neither party has provided a copy of the Cumberland County indictment, the Court assumes that Plaintiff was charged with armed burglary in violation of N.J.S.A. § 2C:18-2.[8]

---

[8]The statute defines burglary as including the entrance into a structure without license or privilege with the purpose of committing an offense within the structure. Burglary is a crime of the second degree if the actor attempts or threatens to inflict bodily injury on anyone, or is armed with a deadly weapon.

Plaintiff does not dispute that he knocked on the door with his gun with such force as to dent the door and proceeded to enter and walk through the ground floor of the house brandishing the gun, facts sufficient to support an indictment for armed burglary. Moreover, the Cumberland County indictment was dismissed and no federal charges were pursued with regard to the home invasion. Plaintiff has suffered no cognizable injury from Scull's testimony regarding the alleged home invasion.[9]

**D.**

Plaintiff alleges that Defendant Giamari failed to follow departmental procedure when he gathered together all of the officers involved in Plaintiff's arrest to drive them back to the station to have their statements taken regarding the shooting. Plaintiff has not demonstrated in any way how Giamari's actions deprived him of a constitutional right, and thus cannot maintain a claim under Section 1983.

---

[9] In *Briscoe v. LaHue*, 460 U.S. 325 (1983), the Supreme Court held that police officers are entitled to absolute immunity from claims brought pursuant to Section 1983 arising out of allegedly perjured testimony given at criminal trials.  Neither the Supreme Court nor the Third Circuit have squarely held that this immunity extends to testimony given before the grand jury, although the Third Circuit has extended *Briscoe* to adversarial pre-trial proceedings. In light of the Supreme Court's subsequent decision in *Malley v. Briggs*, 475 U.S. 335 (1986), holding that police officers are not entitled to absolute immunity for knowing false statements made in procuring a warrant, several courts have questioned whether police officers testifying as the complaining witness before the grand jury are entitled to absolute immunity.  *See Kulwicki v. Dawson*, 969 F.2d 1454 (3d Cir. 1992); *Anthony v. Baker*, 955 F.2d 1395 (10th Cir. 1992); *Palma v. Atlantic County*, 53 F. Supp. 2d 743 (D.N.J. 1999).  Given this Court's conclusion that Plaintiff's claim against Scull has no merit, we need not address the issue of immunity.

**E.**

Given the Court's holding that none of the individual Defendants caused Plaintiff to suffer a deprivation of his constitutional rights, Plaintiff cannot sustain a claim against the City of Bridgeton pursuant to *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978).

**IV.**

For the reasons set forth above, Defendants' summary judgment motions will be granted. The Court will issue an appropriate order.

Date: January 17th, 2006

s/*Joseph E. Irenas*<br>JOSEPH E. IRENAS, S.U.S.D.J.